# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA

ATP SCIENCE PROPRIETARY, LTD.,
an Australian proprietary limited
company, and ATP INSTITUTE
PROPRIETARY LIMITED, an Australian
proprietary limited company,

Plaintiffs,

vs.

CAESAR BACARELLA, an individual,
ALPHA PRIME APPAREL, INC., a Florida
Corporation and ALPHA PRIME REGIMEN,
LLC, a Florida limited liability company,

Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs ATP Science Proprietary Ltd. and ATP Institute Proprietary Limited, by and through undersigned counsel, file their Complaint and Demand for Jury Trial against Defendants Caesar Bacarella, Alpha Prime Apparel, Inc., and Alpha Prime Regimen LLC as follows:

## NATURE OF THE ACTION

1.     This is a civil action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1114(1)(a) and § 1125(a), common law trademark infringement and violations of the Florida Deceptive and Unfair Trade Practices Act, F.S. §§ 501.201, *et seq*.

## THE PARTIES

2. Plaintiffs ATP Science Proprietary Ltd ("ATP Science") and ATP Institute Proprietary Limited ("ATP Institute") are Australian companies with a principal place of business in Loganholme, Queensland, Australia. ATP Science and ATP Institute are collectively referred to hereinafter as "ATP".

3. ATP Science develops, manufactures, distributes, markets and sells sports nutrition products and dietary supplements in Australia, the U.S. and several other countries worldwide. ATP Science manufactures its products in Australia and imports them into the U.S., where its products are distributed pursuant to a distribution agreement with an affiliated U.S. entity.

4. Defendant Caesar Bacarella ("Bacarella") is an individual residing in Broward County, Florida. He is over the age of 18 and is otherwise *sui juris*.

5. On January 17, 2017, Bacarella formed Defendant Alpha Prime Apparel, Inc. ("Alpha Prime Apparel"), a Florida corporation with its principal place of business in Broward County, Florida.

6. On January 15, 2020, Bacarella formed Alpha Prime Regimen LLC ("Alpha Prime Regimen, LLC"), a Florida corporation with its principal place of business in Broward County, Florida.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over ATP's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

8. This action also arises under 28 U.S.C.A. § 1332 by reason of diversity of citizenship, and the amount in controversy, exclusive of interests and costs, exceeds the sum or value of $75,000.

9. This Court has supplemental jurisdiction over ATP's pendent state law claims pursuant to 28 U.S.C. § 1367 in that the state law claims are integrally interrelated with ATP's federal claims and arise from a common nucleus of operative facts such that the administration of ATP's state law claims with its federal claims furthers the interest of judicial economy.

10. This Court has personal jurisdiction over Defendants because Bacarella is a resident of the State of Florida and, Alpha Prime Apparel and Alpha Prime Regimen maintain their principal place of business in Florida.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this judicial district and because the Defendants are subject to personal jurisdiction in this district.

## THE TRADEMARK

12. On or about September 28, 2015, ATP Institute filed an application for the word mark ALPHA PRIME in Australia for use with pharmaceutical products, naturopathic products, herbal dietary supplements, vitamins, nutritional supplements, and energy drinks, and several other related descriptions of goods.

13. The Australia Registrar of Trade Marks issued a registration certificate number 1724423 on August 2, 2016, with an effective date of September 28, 2015.

14. On or about June 19, 2017, ATP Institute filed a U.S. trademark application for the word mark ALPHA PRIME, using its international registration as a basis (66A), and for use with pharmaceutical products, natural remedies and supplement, herbal dietary supplements, food supplements, protein supplements, vitamins, nutritional supplements, and several other related descriptions of goods.

3

15. ATP Institute received a US trademark registration #5430591 for ALPHA PRIME on March 27, 2018, thus entitling it the exclusive right to use the name ALPHA PRIME for supplements.

16. ATP Institute has an exclusive licensing arrangement with ATP Science for use of its ALPHA PRIME mark.

17. In or around 2017, ATP Science began marketing and selling the Alpha Prime supplement in the US through its affiliated distributor, and it has continuously sold that product in the U.S. and through interstate commerce since that time.

18. ATP Science sells the Alpha Prime supplement on its own website, as well as through Amazon.com.

19. ATP Science maintains a high profile, particularly within the sports nutrition and bodybuilding segment of the supplement industry, through social media platforms including Facebook and Instagram.

20. The ALPHA PRIME mark for supplements is inherently distinctive, and through the efforts of ATP Science, has achieved secondary meaning with the consuming public as an identifier of high-quality supplements.

21. Indeed, the Alpha Prime supplement which is sold by ATP Science under the trademark ALPHA PRIME is well and favorably known in the U.S. The mark has come to designate the goods of ATP and no other, so that the goodwill represented by the mark is of great value to ATP. The Alpha Prime supplement has acquired a distinctive reputation to the public through advertising and by the high quality of those goods. ATP has built valuable goodwill in the business in connection with the ALPHA PRIME trademark and ATP's goods have become favorably known to the public.

22. ATP Science is in the process of entering into an important distribution agreement with one of the largest online retailers of supplements and sports nutrition products in the U.S.

23. Of the ATP Science products to be sold through this online retailer, Alpha Prime is expected to be among the top 5 best sellers; specifically, sales of the Alpha Prime supplement through this retailer are forecasted to generate revenue in excess of $1M per year.

24. Alpha Prime Apparel also maintains a social media presence on social media platforms, like Facebook and Instagram, and a specific target audience within the bodybuilding community.

**DEFENDANTS' INFRINGING AND UNLAWFUL ACTS**

25. On June 17, 2016, Bacarella filed an intent to use (basis 1B) trademark application with the USPTO for the word mark ALPHA PRIME for use with athletic apparel, footwear, jackets, compression shirts and shorts, backpacks and bags specifically adapted for sports equipment.

26. According to USPTO proceedings, Bacarella claims his first use of the ALPHA PRIME mark for athletic wear, jackets and footwear was May 1, 2016. The first use for compression shirts and shorts is listed as June 15, 2016. The first use for backpacks and sports equipment bags was May 22, 2017.

27. Alpha Prime Apparel, LLC sells athletic apparel online via its website, alphaprimeusa.com.

28. On October 29, 2019, Bacarella, through his attorney, filed a trademark application with the serial number 88672944 for the word mark ALPHA PRIME

REGIMEN for use with dietary supplements, nutritional supplements, protein supplements and vitamin supplements.

29. On February 3, 2020, the USPTO trademark examiner issued an Office Action refusing the ALPHA PRIME REGIMEN trademark application under Section 2(d) of the Trademark Act due to likelihood of confusion with ATP's ALPHA PRIME mark. A true and accurate copy of the February 3, 2020 Office Action is attached hereto as **Exhibit 1**.

30. The trademark examiner noted the marks ALPHA PRIME and ALPHA PRIME REGIMEN are virtually identical, and merely adding the descriptive word "REGIMEN" "does not obviate the similarity between the compared marks…nor does it overcome a likelihood of confusion…" *See* Exhibit 1.

31. In further support of the refusal, the examiner explained the proposed goods identified in the ALPHA PRIME REGIMEN application are "identical" to the goods identified in ATP's ALPHA PRIME registration. *See* Exhibit 1.

32. Indeed, not only are the goods exactly the same for purposes of the goods and services category description, but the target audience for both companies is the same subset of the supplement industry, namely bodybuilders and individuals interested in sports nutrition.

33. Notwithstanding the rejection of its trademark application and despite the trademark's examiner's determination that Bacarella's proposed trademark would infringe on ATP's Trademark, as early as February 15, 2020, Bacarella began advertising his ALPHA PRIME Pre-Workout supplement on the Alpha Prime USA Instagram page.

34. On or about February 25, 2020, Bacarella began advertising his ALPHA PRIME Pre-Workout supplement on the Alpha Prime USA Facebook page.

6

35. According to the Alpha Prime USA Instagram, Bacarella planned to launch his ALPHA Prime Pre-Workout supplement on March 6, 2020 at the Arnold Classic Bodybuilding Show in Columbus, Ohio. The Arnold Classic was ultimately cancelled at the last minute due to coronavirus concerns.

36. Upon discovery of Bacarella's confusingly similar trademark application, ATP immediately advised its U.S. legal counsel to send a cease and desist letter which was transmitted to Bacarella's attorney of record on March 5, 2020 (the "Cease and Desist Letter"). A true and accurate copy of the Cease and Desist Letter is attached hereto as **Exhibit 2**.

37. On or about March 7, 2020, after confirmed receipt of the ATP cease and desist letter and notice of ATP's intent to enforce its trademark rights, Bacarella began selling his ALPHA PRIME supplements online via the website alphaprimeusa.com and utilized target advertising for the products on social media, including Facebook, Instagram and Twitter.

38. Currently, Bacarella's ALPHA PRIME supplements prominently feature the "ALPHA PRIME" name with the descriptive language "Sports Regimen" appearing below in much smaller type size. A true and accurate copy of the Bacarella product label, as published on the alphaprimeusa.com website, is attached hereto as **Exhibit 3**.

39. To date, Bacarella continues to sell the infringing products on his website and promotes the products on his Alpha Prime USA social media accounts.

40. To date, Bacarella has not responded to the USPTO's office action dated February 3, 2020 (although the response is not due until August 2020).

41. Transitioning from clothing products to bodybuilding supplements is not a natural expansion a reasonable consumer would expect.

42. To protect its rights in the ALPHA PRIME mark, ATP must take legal action to enforce those rights and avoid implied consent or acquiescence to Bacarella's infringement.

43. Plaintiffs have been compelled to hire undersigned counsel and are obligated to pay them a reasonable fee.

44. All conditions precedent have occurred, been waived or have otherwise been satisfied.

## COUNT ONE

### Infringement of Federally Registered Trademarks and Service Marks
### 15 U.S.C. § 1114(1)(a)

45. ATP realleges and incorporates each and every allegation contained in the paragraphs above as if said allegations were fully set forth herein.

46. ATP has used its US registered ALPHA PRIME mark in commerce in connection the goods and services noted in the application, namely, those which would be classified as natural remedies and supplements, herbal dietary supplements, and/or nutritional supplements.

47. Defendants had both actual and constructive knowledge of ATP's ownership of and rights in its federally registered mark prior to Defendants' infringing use of those marks.

48. Defendants adopted, and continued to use in commerce, ATP's federally registered mark, and marks confusingly similar thereto, with full knowledge of ATP's superior rights, and with full knowledge that their infringing use of ATP's marks was likely to cause confusion, mistake and/or deception.

49. Defendants' acts were without license or consent of ATP.

50. Defendants offer their goods under the infringing marks in the same channels of trade as those in which ATP offers its legitimate goods.

51. Defendants' unauthorized and infringing use of ATP's name and marks in connection with the marketing and sale of its products is likely to cause confusion, mistake or deception as to their affiliation, connection or association with ATP, in violation of 15 U.S.C. § 1114.

52. Defendants' actions constitute unauthorized, malicious, deliberate, and willful infringement of ATP's federally registered marks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

53. As a result of Defendants' infringement, ATP has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by ATP in its federally registered marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which ATP has no adequate remedy at law. ATP will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

54. By reason of Defendants' willful acts, ATP is also entitled to damages, including but not limited to treble damages, under 15 U.S.C. § 1117.

55. This is an exceptional case, justifying an award of attorneys' fees in ATP's favor under 15 U.S.C. § 1117, which are specifically pled and demanded.

## COUNT TWO

### Federal Unfair Competition and False Designation of Origin
### 15 U.S.C. § 1125(a)

56. ATP realleges and incorporates paragraphs 1-44 above as if said allegations were fully set forth herein.

57. Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive ATP of the ability to control the consumer perception of its products and services offered under ATP's mark, placing the valuable reputation and goodwill of ATP in the hands of Defendants.

58. Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with ATP, and as to the origin, sponsorship or approval of Defendants products, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

59. Defendants had direct and full knowledge of ATP's prior use of and rights in its mark before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

60. As a result of Defendants' aforesaid conduct, ATP has suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by ATP in its mark. The value of this continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which ATP has no adequate remedy at law. ATP will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

61. By reason of Defendants' willful acts, ATP is also entitled to damages, including but not limited to treble damages, under 15 U.S.C. § 1117.

62. This is an exceptional case, justifying an award of attorneys' fees in ATP's favor under 15 U.S.C. § 1117, which are specifically pled and demanded.

## COUNT THREE

## Common Law Trademark Infringement

63. ATP realleges and incorporates paragraphs 1-44 above as if said allegations were fully set forth herein.

64. ATP is the owner of all common law rights in and to the ALPHA PRIME mark for supplements.

65. Defendants use of the ALPHA PRIME mark in its marketing and sales of its supplement products is likely to cause confusion or mistake as to the source or origin of the products.

66. Defendants have intentionally advertised and offered for sale Defendants' products in a manner likely to cause confusion or mistake and so as to confuse and deceive clients, potential customers, and the community at large, as to the origin and/or affiliation of Defendants' products, based upon the merit, reputation, and goodwill of ATP and its products.

67. Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, fraudulent, and in bad faith.

68. Defendants' conduct has caused and will continue to cause irreparable damage to ATP, for which ATP has no adequate remedy at law. Unless enjoined, Defendants will continue their violation, further injuring ATP and confusing the public.

69. Defendants have received revenues and profits as a result of their trademark infringement to which Defendants are not entitled. Accordingly, Defendants have unfairly profited from the actions alleged herein.

70. Additionally, ATP has suffered damages as a result of Defendants' infringement upon ATP's trademark for which Defendants are responsible. By reason of

Defendants' acts alleged herein, ATP has also suffered damage to the goodwill associated with the ALPHA PRIME mark and has suffered and will continue to suffer irreparable harm.

## COUNT FOUR – CLAIM FOR DECLARATORY JUDGMENT PURSUANT TO FLORIDA STATUTES §501.211

### Florida's Deceptive and Unfair Trade Practices Act

71. ATP realleges and incorporates paragraphs 1-44 as if each and every allegation contained in said paragraphs were fully set forth herein.

72. Defendants' deceptive and unfair methods of competition and use of ATP's trademark constitute acts in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes §§ 501.201, *et seq*.

73. ATP is an "aggrieved" person under §501.211 which provides that "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

74. There is a bona fide, actual present and practical need for the declaratory judgment sought; the declaration deals with a present ascertained or ascertainable state of facts or present controversy as to a state of facts; some immunity power, privilege or right of ATP is dependent upon the facts or the law application to the facts; ATP has an actual, present adverse and antagonistic interest in the subject matter, in fact or law; the antagonistic and adverse interests are all before this Court by proper process; and the relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

75. Defendants' unfair and deceptive trade practices have taken place in connection with trade and commerce, and Defendants' acts would likely and in fact do mislead consumers, potential and actual ATP customers acting reasonably under the circumstances as to whether Defendants and their products are affiliated with ATP.

76. By reason of Defendants' acts alleged herein, ATP has suffered damage to the goodwill associated with the ALPHA PRIME mark and has suffered and will continue to suffer irreparable harm. Unless enjoined, Defendants will continue to violate FDUTPA, further injuring ATP and confusing the public. Accordingly, ATP is entitled to entry of injunctive relief.

77. Defendants' acts and practices as alleged herein offend public policy, are unethical, willful, oppressive, and unscrupulous, and cause and have caused ATP and consumers substantial and unavoidable injury.

78. ATP seeks an award of attorneys' fees and court costs as provided by Florida law, including §501.2105.

## COUNT FIVE – CLAIM FOR DAMAGES
### Violation of Florida's Deceptive and Unfair Trade Practices Act

79. ATP realleges and incorporates paragraphs 1-44 as if each and every allegation contained in said paragraphs were fully set forth herein.

80. Defendants' deceptive and unfair methods of competition and use of ATP's trademark constitute acts in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes §§ 501.201, et seq.

81. ATP is an "aggrieved" person under the FDUTPA and has standing to bring this claim.

82. Defendants' unfair and deceptive trade practices have taken place in connection with trade and commerce, and Defendants' acts would likely and in fact do mislead consumers, potential and actual ATP customers acting reasonably under the circumstances as to whether Defendants and their products are affiliated with ATP.

83. Defendants' acts and practices as alleged herein offend public policy, are unethical, oppressive, and unscrupulous, and cause and have caused ATP and consumers substantial and unavoidable injury.

84. As a direct and proximate result of Defendants' deceptive and unfair trade practices and practices, ATP has sustained injury and damages which ATP seeks to recover.

85. ATP seeks an award of attorneys' fees and court costs as provided by Florida law, including §501.2105.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs ATP Science Proprietary Ltd. and ATP Institute Proprietary Limited respectfully request that the Court enter judgment against Defendants as follows:

A. That the Court issue preliminary and permanent injunctive relief against Defendants, and that Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assignees, and all others in active concert or participation with Defendants, be enjoined and restrained from: (i) registering, using, or trafficking in any name that is identical or confusingly similar to the ALPHA PRIME mark in conjunction with dietary supplements or other sports nutrition products; (ii) infringing ATP's trademark set forth above; (iii) assisting, aiding, or abetting any other person or business

  entity from engaging in or performing any of the activities referred to in subparagraphs (i) and (ii) above.

B. That the Court enter a declaratory judgment that Defendants' actions are violative of the Florida Deceptive and Unfair Trade Practices Act and further enjoin Defendants from further violations of said Act.

C. That the Court award damages under the Florida Deceptive and Unfair Trade Practices Act.

D. That the Court award ATP treble damages pursuant to 15 U.S.C § 1117;

E. That the Court order Defendants to disgorge all ill-gotten gains;

F. That the Court award ATP its attorneys' fees and costs; and

G. That the Court grant ATP all other relief to which it is entitled and such other or additional relief as is just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all matters triable as of right in the instant cause of action.

Dated: April 22, 2020

Respectfully submitted,

/s/ *Deborah Baker*, Esq.
DEBORAH BAKER, ESQ.
Florida Bar No.: 294380
RACHEL E. WALKER, ESQ.
Florida Bar No. 0111802
SMGQ LAW
Satellite Office – One Biscayne Tower
2 South Biscayne Blvd, 34th Floor
Miami, FL 33131
Office Phone: (305) 377-1000
Direct Phone: (786) 304-1543
Direct Fax: (855) 327-0391

Primary Email: Dbaker@smgqlaw.com
Primary E-mail: RWalker@smgqlaw.com
Secondary E-mail: Aalbuerne@smgqlaw.com

-and-

*/s/ John W. Becker, Esq*.
JOHN W. BECKER, ESQ.
Ohio Bar No.: 0065491
HARPST BECKER LLC
1559 Corporate Woods Parkway
Suite 250
Uniontown, OH 44685
Telephone: (330) 983-9971
Facsimile: (330) 983-9981
Primary E-mail: jbecker@harpstbecker.com
*Pending Pro Hac Vice Admission*

*/s/ Christine Garritano, Esq.*
CHRISTINE GARRITANO, ESQ.
Ohio Bar No.: 0078423
HARPST BECKER LLC
1559 Corporate Woods Parkway
Suite 250
Uniontown, OH 44685
Telephone: (330) 983-9971
Facsimile: (330) 983-9981
Primary E-mail: cgarritano@harpstbecker.com
*Pending Pro Hac Vice Admission*

*Attorneys for Plaintiffs*