UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 20-cv-60827-SINGHAL

ATP SCIENCE PROPRIETARY, LTD., an
Australian proprietary limited company, and
ATP INSTITUTE PROPRIETARY LIMITED, an
Australian proprietary limited company,

    Plaintiffs,

v.

CAESAR BACARELLA, an individual, ALPHA
PRIME APPAREL, INC., a Florida Corporation,
and ALPHA PRIME REGIMEN, LLC, a Florida
limited liability company,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on both Plaintiffs' request for a preliminary injunction and Defendants' Motion to Dismiss Complaint (DE [21]). The Court has reviewed the Complaint (DE [1]), the parties' briefing, and applicable law. For the following reasons, Plaintiffs' request for a preliminary injunction is **GRANTED** and Defendants' motion to dismiss is **DENIED**. This order follows.

**I.**     **BACKGROUND**

Plaintiffs ATP Science Proprietary, Ltd. and ATP Institute Proprietary Limited (collectively, "ATP") hold the trademark for the word mark "Alpha Prime" ("Mark"), used with pharmaceutical products, naturopathic products, herbal dietary supplements, vitamins, nutritional supplements, and energy drinks. Compl. ¶¶ 12–14 (DE [1]). The trademark was issued in Australia—ATP's home country, *id.* ¶ 2—on August 2, 2016, with

an effective date of September 28, 2015.  *Id.* ¶ 13.  ATP then registered the Mark in the United States through its international registration.  *Id.* ¶¶ 14–15.  ATP received the U.S. trademark registration on March 27, 2018.  *Id.* ¶ 15.  Sometime in 2017, ATP entered the U.S. market, and began marketing and selling the Alpha Prime supplement in the United States on its own website and on third-party, commercial giant Amazon.com.  *Id.* ¶¶ 17–18.

On June 17, 2016, Defendant Caesar Bacarella filed an intent to use trademark application with the U.S. Patent and Trademark Office ("USPTO") for the work mark "Alpha Prime" for use with athletic apparel, footwear, jackets, compression shirts and shorts, backpacks, and bags.  *Id.* ¶ 25.  He represented to the USPTO that his use of the mark dated back to May 1, 2016.  *Id.* ¶ 26.  On January 17, 2017, Bacarella formed Defendant Alpha Prime Apparel, Inc., *id.* ¶ 5, and, on January 15, 2020, he formed Defendant Alpha Prime Regimen LLC, *id.* ¶ 6.  Alpha Prime Apparel, Inc.[1] sells its products on its own website.  *Id.* ¶ 27.

On October 29, 2019, Bacarella filed a trademark application with the USPTO for the word mark "Alpha Prime Regimen" for use with dietary, nutritional, protein, and vitamin supplements.  *Id.* ¶ 28.  The USPTO, on February 3, 2020, promptly rejected the trademark application due to likelihood of confusion with the Mark, stating two primary reasons: (1) The Mark and "Alpha Prime Regimen" are virtually identical; and (2) The proposed goods identified in Bacarella's application were "identical" to the goods identified in ATP's application.  *Id.* ¶ 29.

---

[1] In paragraph 27 of the Complaint, Plaintiffs identify this entity as "Alpha Prime Apparel, **LLC**."  The Court assumes (with no legal significance) that Plaintiffs misidentified the entity, and they meant "Alpha Prime Apparel, ***Inc.***"

Despite the USPTO's February 3 rejection, "Alpha Prime USA"[2] began advertising the new "Alpha Prime Pre-Workout" supplement as soon as twelve days later, and announced a March 6, 2020 launch date at a bodybuilding show in Ohio. *Id.* ¶¶ 33–35. ATP sent a cease and desist letter to Bacarella's counsel upon discovering this; the letter was dated March 5, 2020. *Id.* ¶ 36; *see also* Ex. 2 to Compl. (DE [1-6]). Two days later, on March 7, 2020, after confirming receipt of the cease and desist letter, Bacarella began selling the Alpha Prime Pre-Workout supplement on a website with the URL address of alphaprimeusa.com, and used advertising campaigns on social media. Compl. ¶ 37. Plaintiffs allege that, to date, Defendants market and sell supplements that bear the Mark in prominent fashion and include the descriptive language "Sports Regimen" only in much smaller font below. *Id.* ¶ 38. Below is an example of the supplement that Plaintiffs claim is in violation of the Mark. *See also* Ex. 3 to Compl. (DE [1-7]).



---

[2] It is unclear from the Complaint which entity is "Alpha Prime USA." The Court assumes (again, with no legal significance) that "Alpha Prime USA" is some sort of a fictitious name for either of Bacarella's business entities—both named defendants.

Plaintiffs now bring this five-count action against Defendants for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125, Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, and common-law trademark infringement.  In Count I, Plaintiffs allege "Alpha Prime Sports Regimen" infringes on the Mark, in violation of 15 U.S.C. § 1114(1)(a).  In Count II, they allege unfair competition and false designation of origin, in violation of 15 U.S.C. § 1125(a).  In Count III, they allege common-law trademark infringement.  In Count IV, they bring a claim for declaratory judgment under FDUTPA.  And, in Count V, they bring a claim for damage under FDUTPA.  In their prayer for relief, Plaintiffs include requests for both a preliminary and permanent injunction.  In moving to dismiss, Defendants argue the following: (1) The Complaint is an impermissible shotgun pleading; (2) Plaintiffs fail to state a claim for injunctive relief; and (3) Plaintiffs' claims under FDUTPA are improper because they should have brought the claims under the federal Lanham Act instead.

First, the Court will briefly discuss the merits of Defendants' motion to dismiss, specifically their first and third arguments.  Following this analysis, the Court will discuss Plaintiffs' request for a preliminary injunction.  The Court notes Defendants' second argument in favor of dismissal is functionally an argument in opposition to Plaintiffs' request for a preliminary injunction.

## II.     DEFENDANTS' MOTION TO DISMISS

### A.     Legal Standard on a Motion to Dismiss

On a motion to dismiss, "'the question is whether the complaint contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Worthy v. City of Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration in original)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Worthy*, 930 F.3d at 1217. The Court is guided by the well-known principle that, on a motion to dismiss for failure to state a claim, the Court assumes all well-pled allegations in the Complaint are true and views them in the light most favorable to the plaintiff. *Jackson v. Okaloosa Cty.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

### B.  Shotgun Pleading

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 10(b) states, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321.

Defendants argue the Complaint here is a shotgun pleading. The Court disagrees. The purpose of Rules 8(a)(2) and 10(b) are to provide a defendant with "fair notice" of the claims against her and the grounds on which those claims rest. *TracFone Wireless, Inc. v. GSM Grp., Inc.*, 555 F. Supp. 2d 1331, 1336 (S.D. Fla. 2008). And, upon reviewing the

5

Complaint in full, the Court fails to see how Defendants are unable to ascertain what the allegations against them are.

The Complaint does not fail the most basic test for a shotgun pleading: None of the counts incorporate the allegations from the preceding counts.  For example, the factual background set forth in the Complaint spans from paragraph 1 through paragraph 44.  The first paragraph in Count Three is paragraph 63.  That paragraph states: "ATP realleges and incorporates paragraphs **1–44** above as if said allegations were fully set forth herein."  In other words, Count Three does not incorporate the allegations of Counts One or Two, just the factual allegations of the Complaint.  This is consistent for all counts in the Complaint.

Pleading is an art, not a science.  There is no formula for a "perfect" complaint.  The Complaint here, however, is not a shotgun pleading.

### C. Duplicative Statutes

Defendants' argument that Plaintiffs' FDUTPA claims (Counts IV and V) are improper "because section 32 of the Lanham Act is a statute directly on-point" is also unavailing.  The Lanham Act neither conflicts with nor preempts FDUTPA, and courts routinely find these claims can coexist in a complaint and that trademark infringement under the Lanham Act can constitute a deceptive practice under FDUTPA.  *See TracFone Wireless, Inc.*, 555 F. Supp. 2d at 1338 ("Engaging in trademark infringement is an unfair and deceptive trade practice that constitutes a violation of the Act."); *Laboratorios Roldan, C. por A. v. Tex Int'l, Inc.*, 902 F. Supp. 1555, 1569–70 (S.D. Fla. 1995) (explaining that intentionally palming off or passing off products is the type of behavior which FDUTPA was meant to protect against).  Plaintiffs' claims for FDUTPA should remain.

### III.     PRELIMINARY INJUNCTION

#### A.     Procedural Posture

Before addressing the merits of Plaintiffs' request for a preliminary injunction, the Court notes Plaintiffs have *not* filed a separate application for such relief. While it is common practice for plaintiffs to file their complaint and, then subsequently, file a separate motion for a preliminary injunction, no part of Federal Rule of Civil Procedure 65 requires a separate filing. And the Court is not aware of any case law construing such a requirement.

Indeed, the only requirement expressly stated in Rule 65 is that the adverse party must receive notice prior to the Court issuing injunctive relief in favor of the moving party. Fed. R. Civ. P. 65(a) ("The court may issue a preliminary injunction only on notice to the adverse party."). "[T]he purpose of Rule 65's notice requirement is to provide the party opposing the preliminary injunction with a 'fair opportunity to oppose the application and to prepare for such opposition.'" *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1311 (11th Cir. 1998) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 432 n.7 (1974)).

Buttressing this interpretation of Rule 65, in *Cannon v. U.S. Acoustics Corp.*, 532 F.2d 1118, 1119 (7th Cir. 1976), the defendants' first responsive pleading to the complaint was a motion to disqualify the plaintiffs for an alleged conflict of interest. In the motion to disqualify, the defendants also requested a preliminary injunction, which the district court granted. *Id.* On appeal, the plaintiffs argued the district court erred because the "defendants did not file a motion for an injunction." *Id.* at 1120. The circuit court disagreed with this reading of Rule 65: "[D]efendants' brief in support of the disqualification motion

7

did request [an injunction], and plaintiffs had ample opportunity to respond to this request or to seek oral argument thereon. *Id.* Simply, the court found "sufficient compliance with the prerequisites of Rule 65(d)." *Id.*

Here, Defendants have not only been on notice of Plaintiffs' request for a preliminary injunction (the relief is expressly prayed for in the Complaint), but have argued in opposition to the preliminary injunction in their motion to dismiss. This is sufficient to satisfy not only Rule 65, but also any due process concerns. They have raised argument against it in their motion to dismiss and reply to Plaintiffs' responses in their reply brief. Based on the pleading in the Complaint and the briefing from both sides, the Court has determined there are enough allegations and argument to move forward on the merits of Plaintiffs' request for a preliminary injunction. No purpose would be served by awaiting additional briefing from the parties, as "trademark actions are common venues for the issuance of preliminary injunctions . . . ." *McDonald's Corp.*, 147 F.3d at 1310 (internal quotation omitted).

### B. Legal Standard for a Preliminary Injunction

> A preliminary injunction is appropriate if the movant demonstrates all of these elements: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest.

*Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014). "The grant or denial of a preliminary injunction rests within the sound discretion of the district court." *Transcon. Gas Pipe Line Co. v. 6.04 Acres, More or Less*, 910 F.3d 1130, 1163 (11th Cir. 2018). "A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly establishe[s] the burden of persuasion as to each of the four

prerequisites." *Devs. Sur. & Indem. Co. v. Bi-Tech Constr., Inc.*, 964 F. Supp. 2d 1304, 1308 (S.D. Fla. 2013) (internal quotation omitted) (alteration in original).

### C. Legal Analysis

#### 1. Substantial Likelihood of Success on the Merits

Plaintiffs have established a substantial likelihood of success on the merits of their claims. "To demonstrate a likelihood of success on the merits under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Plaintiff must show: (1) the validity of its marks; and (2) a likelihood of confusion . . . ." *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1353 (S.D. Fla. 2002). Here, Plaintiffs have shown both prongs.

##### a. The Mark's Validity

"Registration of a trademark on the principal register of the USPTO is prima facie evidence of validity and establishes a presumption that the mark is protectable or distinct." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1346 (S.D. Fla. 2016). Plaintiffs have pled U.S. trademark registration #5430591 for the Mark ("Alpha Prime") received on March 27, 2018. This, alone, is prima facie evidence that the Mark is valid for the first prong.

Defendants, however, argue that, because Plaintiffs did not attach a certificate of incontestability, they have failed to establish that their trademark is incontestable. While true that the failure to attach such a certificate would preclude a finding of incontestability, a trademark need not be "incontestable" for it to be "valid." In other words, incontestability is sufficient for validity, but not necessary. Incontestability under 15 U.S.C. § 1065 is "*conclusive* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to

9

use the registered mark in commerce." *Marco's Franchising, LLC v. Marco's Italian Express, Inc.*, 2007 WL 2028845, *4 (M.D. Fla. July 9, 2007) (emphasis in original). Plaintiffs need not show *conclusive* evidence of the Mark's validity. Indeed, case law is replete of instances where courts have found a mark to be valid with a showing of registration alone. *E.g.*, *Pentair Filtration Sols., LLC v. Superior Water Sys. Co. Inc.*, 2013 WL 12091625, at *2 (S.D. Fla. Aug. 8, 2013) ("Plaintiffs have demonstrated that they possess a valid mark. Specifically, they own the "EVERPURE®" trademark and stylized trademark.").

### b.  A Likelihood of Confusion

Courts evaluate seven factors when determining the likelihood of confusion: "(a) the strength of the mark, (b) the similarity of marks, (c) the similarity of the goods, (d) similarity of the sales methods, (e) the similarity of advertising media, (f) defendants' intent, and (g) evidence of actual confusion." *Pentair Filtration*, 2013 WL 12091625, at *2. Defendants spend an inordinate amount of argument on the seventh factor—evidence of actual confusion between the Mark and Defendants' use of the Mark. That will be discussed below. As for the first six factors, Plaintiffs point to the following:

<u>Strength of the Mark.</u>  They plead the Mark is "inherently distinctive" and it "has achieved a second meaning with the consuming public as an identifier of high-quality supplements." Compl. ¶¶ 20–21.

<u>Similarity of the Mark and Defendants' use of the Mark.</u>  The Court agrees with Plaintiffs when they insist the Mark and Defendants' use of the Mark are "virtually identical." Compl. ¶ 30. Defendants' argument that Plaintiffs "fail to include facts to support why the alleged marks are similar" cannot be taken seriously. The Mark is two

words: "Alpha Prime." Defendants use the Mark in their products. There is no genuine argument that Defendants' use of the Mark is, at the very least, "similar" to the Mark itself for purposes of this second factor.

Further, the Court finds Defendants have not taken sufficient steps in even attempting to distinguish what it purports is its mark. Again, what the Court finds most compelling is Defendants' use of the Mark in large, bolded font, contrasted with the differentiating words "Sports Regimen" in much smaller, un-bolded font. For point-of-reference, below is the same picture as previously displayed in this order, cropped and magnified, focusing on what Defendants' argue is their trademark of "Alpha Prime Sports Regimen." *See also* Ex. 3 to Compl. (DE [1-7]).



This cannot be sufficient for Defendants to make the Mark its own. And it's certainly not sufficient to withstand an analysis on the likelihood of confusion.

Similarity of goods. Like the marks, the goods are identical. Plaintiffs have sufficiently pled such. *See* Compl. ¶ 31. The entire line of goods sold by both Plaintiffs and Defendants are in sports nutrition and supplements.

Similarity of Sales Methods and Similarity of Advertising Methods. Both Plaintiffs and Defendants sell primarily through online marketplaces. Further, both Plaintiffs and Defendants advertise primarily through social media. *See Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co.*, 2012 WL 640700, at *3 (S.D. Fla. Feb. 27, 2012) (finding factor weighed in favor of plaintiffs, as both sold primarily online). *But see Experience*

*Hendrix, LLC v. Tiger Paw Distribs., LLC*, 2016 WL 3523972, at *5 (S.D. Ga. June 22, 2016) (finding factor weighed in favor of defendants because plaintiffs sold products online, whereas defendants sold products in retail stores).

<u>Intent.</u>  Bacarella proceeded with selling his supplements online with the Mark after receiving a cease-and-desist letter.  *See* Compl. ¶ 37.  This creates a presumption that Bacarella intended to confuse the marketplace.  *W. Union Holdings, Inc. v. Haideri Paan & Cigarettes Corp.*, 2020 WL 1061653, at *7 (E.D.N.Y. Mar. 5, 2020) (continuing to use trademark after receiving cease-and-desist letter sufficient to create presumption of intent to confuse market).

As for the seventh factor, Defendants argue that Plaintiffs have not established a substantial likelihood of confusion between the two marks because they have not alleged that "actual confusion has occurred."  While the Court appreciates the wording of this prong—"evidence of actual confusion"—the Eleventh Circuit has explained that, "although it is the best such evidence," "[t]he law is well settled in this circuit that evidence of *actual* confusion between trademarks is not necessary to a finding of likelihood of confusion."  *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985) (emphasis in original).  Besides *E. Remy Martin* being binding on this Court, it makes sense.  It would be nonsensical, at this point—on a request for a preliminary injunction—to require the moving party to *prove* its case with *actual evidence* of confusion.  To that end, the Court finds Plaintiffs' eloquently stated argument compelling:

> Indeed, if evidence of actual confusion was a necessary prerequisite, a trademark owner would paradoxically be forced to sit on its rights and allow infringement to continue for a sufficient time period to accrue evidence of actual confusion, while simultaneously jeopardizing its registrations through

12

possible abandonment arguments by not taking action to protect those rights.

Further, "the quantum of evidence needed to show actual confusion is relatively small." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir. 2010). And, all of the foregoing must be balanced with the fact that these seven factors are just that—factors. *See You Fit, Inc. v. Pleasanton Fitness, LLC*, 2013 WL 521784, at *2 (M.D. Fla. Feb. 11, 2013). The case law does not identify them as prongs in a test; certainly, it is not a conjunctive test where each factor must be met. *Id.* ("When balancing the factors, the issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists."). Thus, even if it were necessary for Plaintiffs to *prove* actual evidence that confusion has already occurred to satisfy this seventh factor, Plaintiffs have more than satisfied the first six factors. *See also AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986) ("The appropriate weight to be given to each of these factors varies with the circumstances of the case.").

## 2. Other Factors for a Preliminary Injunction

"The Eleventh Circuit has acknowledged that once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, there is a presumption of irreparable harm." *adidas AG v. adidascrazylight2.com*, 2013 WL 1651731, at *7 (S.D. Fla. Apr. 16, 2013) (internal quotation omitted); *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1219 (N.D. Ga. 1995) ("When a plaintiff makes a prima facie showing of trademark infringement, irreparable harm is ordinarily presumed."). Moreover, a court may "decide that the particular circumstances of the instant case bear substantial parallels to previous cases such that a presumption of irreparable injury is an

appropriate exercise of its discretion in light of the historical traditions." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008).

The Court finds such. There is little doubt, given all the parallels between the Mark and Defendants' use of the Mark—the identical name, method of primarily online sales, medium of advertising through social media—that Plaintiffs stand to suffer irreparable harm in the absence of a preliminary injunction.

The third consideration for the Court is whether the threatened injury to Plaintiffs "outweighs the harm the preliminary injunction would cause" Defendants. *See Chavez*, 742 F.3d at 1271. This prong, like irreparable harm, factors in favor of Plaintiffs, because they hold the registration of the Mark. *Foxworthy*, 879 F. Supp. at 1219.

Finally, the Eleventh Circuit has held that "the public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001). Plaintiffs have satisfied this prong. The Court finds it is in public interest to enjoin Defendants' continued use of the Mark pending a full trial on the merits; Defendants have continued to use the Mark despite receiving a cease-and-desist letter and proper notice that their products violate a valid and registered trademark.

### 3.     Plaintiffs' Security

A party moving for a preliminary injunction must "give security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Here, neither party briefed the amount of bond necessary to satisfy the costs and damages referred to in the

rule.  Accordingly, the Court will set a nominal bond amount of $10,000 noting that actual damages may be quite different.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (DE [21]) is **DENIED**.

2. Plaintiffs' prayer for a preliminary injunction is **GRANTED**.

3. Upon Plaintiffs' posting the above-identified required security pursuant to Rule 65(c), the Court will set the conditions of this preliminary injunction.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 9th day of July 2020.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel via CM/ECF